[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 19, 2010
JOHN LEY
ACTING CLERK

_____

No. 09-12628
Non-Argument Calendar
_____

Agency Nos. A097-196-280
A096-112-954

JULIANTI DARMAWAN,
FNU SUWITO,
PATRICIA ESTRELLA TANOEYJAYA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 19, 2010)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Julianti Darmawan; her husband, FNU Suwito; and Darmawan and Suwito's daughter, P.T., all natives and citizens of Indonesia, petition for review of a decision of the Board of Immigration Appeals that affirmed the denial of their application for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231. They argue that substantial evidence does not support the findings by the Board that Darmawan did not suffer past persecution in Indonesia and that it is not probable that she will be persecuted if she returns to Indonesia. We deny the petition.

## I. BACKGROUND

Suwito arrived in the United States from Indonesia on or about September 5, 2000, and his wife and daughter arrived on or about January 16, 2001. Suwito's visa entitled him to remain in the United States as a non-immigrant visitor until March 4, 2001, and Darmawan's and P.T.'s visas entitled them to remain as non-immigrant visitors until January 15, 2002. All three overstayed their visas.

In October 2007, the United States initiated removal proceedings against Darmawan, Suwito, and P.T. All three sought relief based on an application for asylum and withholding of removal that Darmawan had filed in April 2003 after the one-year deadline for filing an application for asylum had expired. Darmawan's application listed Suwito and P.T. as derivative beneficiaries. In her application, Darmawan stated that she feared that she would be persecuted if she

2

were forced to return to Indonesia because she is a Christian of Chinese ethnicity.

An immigration judge held a hearing in December 2007 to determine whether Darmawan, Suwito, and P.T. were entitled to relief from removal. At the hearing, Darmawan first explained her unsuccessful effort to file an asylum application in 2001 and urged the immigration judge to excuse her late filing. Darmawan described five incidents to prove that she had suffered persecution in the past because of her religion or ethnicity while she lived in Indonesia.

Darmawan described two incidents of sexual harassment. Darmawan testified that, when she was approximately eleven years old, a middle-aged man grabbed her breast. In her application for asylum, Darmawan explained that this man said "hey Chinese" as he assaulted her. Darmawan testified that when she was approximately fourteen years old a group of teenagers surrounded her and said "hey Chinese, shut up or we are going to rape you" while one of the teenagers pulled up her skirt to expose her underwear.

Darmawan described one minor incident of rude behavior. Darmawan testified that, as a university student, she once refused to donate to a street performer. The street performer called Darmawan a "stingy Chinese" and struck her with a can.

Darmawan also testified about a burglary of her home during the riots of May 1998. Darmawan was at home with her daughter when a group of unknown

men approached her house and began to ring the bell. Darmawan was frightened and hid in the bathroom with P.T. When the group pushed down the front door, Darmawan escaped with her daughter through a back door and ran to a friend's house. While Darmawan and P.T. were away, the men damaged and stole items from the home. The immigration judge also accepted as evidence a portion of an affidavit that Suwito had filed as part of the asylum application that mentioned these riots.

Finally, Darmawan testified about an incident that she described as religious persecution. She stated that one evening, while she was at church for choir practice, she heard a group of men outside the church discussing their desire to "burn down the church and kill all of the people inside." The men may have believed that a member of the church killed their friend in a car accident. The men did not enter the church, but they accosted Darmawan's pastor, who was in the parking lot, and beat him until he lost consciousness. Security officials arrived soon after the beating, spoke with the group of attackers, and informed the church members that if they paid the attackers, the attackers would leave. The members paid the attackers, and the attackers left after damaging the church.

After considering the evidence, the immigration judge denied relief. First, the immigration judge refused to excuse Darmawan's late filing of her asylum application. Second, the immigration judge concluded that Darmawan "ha[d] not

4

demonstrated that she is eligible for withholding of removal." He explained that Darmawan was not entitled to a presumption that she would be persecuted upon her return to Indonesia because she "ha[d] not demonstrated that she suffered past persecution within the meaning of the act." See Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). He concluded that Darmawan had not established that individuals who the Indonesian government could not or would not control had perpetrated the two acts of sexual harassment. He also concluded that neither the burglary during the May 1998 riots nor the attack on Darmawan's church were so serious as to constitute persecution.

The immigration judge found that Darmawan had not established "an objective basis for her to fear future harm in Indonesia." See id. He explained that "there does not appear to be sufficient evidence in this record to show that [Darmawan] would be singled out for harm in Indonesia because of her ethnicity or because of her religion." The immigration judge found that Darmawan's family was currently living unmolested in Indonesia and explained that the "[State Department] Country Reports in this case . . . does not support a claim that [Darmawan] will be singled out for harm because of her ethnicity or because of her religion." Consequently, the immigration judge found that, "taken as a whole, . . . the record in this case is insufficient to meet the high burden placed on [Darmawan] to show that there is a clear probability that she would be persecuted

5

in Indonesia on account of a protected ground." The immigration judge also denied relief under the Convention Against Torture.

Darmawan, Suwito, and P.T. appealed to the Board, and the Board "adopt[ed] and affirm[ed] the Immigration Judge's thorough and well-reasoned decision." The Board first "agree[d] with the Immigration Judge's analysis and conclusions on th[e] issue" of Darmawan's untimely application for asylum. The Board then held that the "Immigration Judge correctly concluded that [Darmawan] had not demonstrated past persecution or a clear probability of persecution for withholding of removal." Finally, the Board agreed that Darmawan "failed to show that it is more likely than not that she would be tortured within the scope of the Torture Convention."

## II. STANDARD OF REVIEW

"A factual determination by the [Board] that an alien is statutorily ineligible for . . . withholding is reviewed under the substantial evidence test." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Where, as here, "the Board adopts the [immigration judge]'s reasoning, we will review the [immigration judge]'s decision as well." Id. The substantial evidence test "means that the reviewing court must affirm the [Board]'s decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotation marks omitted). "We have repeatedly emphasized that the test is highly

6

deferential . . . ." Id. "To reverse the [immigration judge]'s fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

## III. DISCUSSION

We must decide only whether Darmawan is entitled to withholding from removal. 8 U.S.C. § 1231. As Darmawan concedes, "we lack jurisdiction to consider her argument regarding the timeliness of h[er] asylum application." Mendoza, 327 F.3d at 1287. Second, Darmawan "does not raise any challenge in her brief to the denial of relief under the Convention Against Torture. . . . [T]hat issue is abandoned." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Finally, because "there are no derivative benefits associated with a grant of withholding of removal," Suwito and P.T. have no claim for withholding of removal. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Consequently, we must review only the decision of the Board that Darmawan is not entitled to withholding of removal.

Darmawan argues that "[w]hen the evidence is properly considered it is clear that [she] suffered past persecution in Indonesia." She also argues that, even if she did not suffer past persecution, "any reasonable fact finder would conclude that [Darmawan], [a] Christian[] who [is] [a] citizen[] of the most populous Muslim country in the world, ha[s] certainly demonstrated that it is more likely than not

7

that [she] will be persecuted" if she returns to Indonesia. We disagree.

Substantial evidence supports the decision of the Board that Darmawan did not suffer past persecution. She presented no evidence that the government of Indonesia was "unable or unwilling to protect her," Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1345 (11th Cir. 2007), from either the teenagers or the middle-aged man who sexually harassed her, or the street performer who struck her with a can for refusing to give him money, and we have explained that "mere harassment does not amount to persecution," Sepulveda, 401 F.3d at 1231. Darmawan failed to prove that either the burglary of her church or the single assault on her home during the 1998 riots were so "extreme," id., as to rise to the level of persecution.

Substantial evidence also supports the decision that Darmawan failed to prove that she probably will be persecuted if she returns to Indonesia. Darmawan relies exclusively on the Country Reports published by the State Department to support her argument that she probably will be persecuted if she returns to Indonesia because there is a "clear and increasing trend of violence against Christians and a government that either cannot or will not stop the attacks and discrimination," but the Reports contain evidence to the contrary. The 2006 Report states that "[i]nstances of discrimination and harassment of ethnic Chinese continued to decline compared with previous years." The 2006 Report also states that Indonesia officially recognizes Catholicism, which Darmawan practices, and

respects freedom of religion.

## IV. CONCLUSION

The petition for review is **DENIED**.